1  TONY TAMBURELLO
   California SBN 46037
2  Law Office of Tony Tamburello
   214 Duboce Avenue
3  San Francisco, CA 94103
   Telephone: (415) 431-4500
4  Facsimile: (415 ) 255-8631

5

6  Counsel for Defendant KUO HSUAN CHANG

7

8

9  IN THE UNITED STATES DISTRICT COURT

   FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
   SAN FRANCISCO DIVISION
11

12  UNITED STATES OF AMERICA,              )   No. CR-13-670-001 CRB
                                           )
13                     Plaintiff,          )   **DEFENDANT KUO HSUAN CHANG'S**
                                           )   **SENTENCING MEMORANDUM**
14  v.                                     )
                                           )   Date:   April 26, 2018
15                                         )   Time:   1:30 p.m.
                                           )   Court:  The Honorable Charles R. Breyer
16                                         )
                                           )
17  KUO HSUAN CHANG,                       )
                                           )
18                     Defendant.          )
    _____   )
19

20              **INTRODUCTION**

21         Mr. Kuo Hsuan Chang, a 78 year old man who has never before been convicted of a

22  crime, stands before the Court for sentencing based upon his admitted involvement in a bid

23  rigging scheme in 2009-2010.  At the outset of the case in November 2013, Mr. Chang was

24  released on his own recognizance, and he has been living a peaceful and law abiding life at home

25  with his wife and grandson ever since.  Mr. Chang is an elderly gentleman who suffers myriad

26

chronic health conditions that require ongoing medical care. He is fortunate in that he has the love of his close family, consisting of his wife, two sons and three grandchildren, as well as a large extended family of siblings. Although he has lived an honorable and hardworking life supporting his family, he feels that his life has been marred by his involvement in this case.

He was invited to attend a foreclosure auction by his business partner in 2009, and together they purchased several properties at artificially low prices. He is deeply ashamed of his participation in this scheme, and regrets his conduct. As he explains in his written Statement of Acceptance of Responsibility, he sees that his conduct was wrong and resulted in properties being sold at unfair prices. He has insight now as to how this was something that may have seemed at the time like something that "everyone else was doing" and just the way people did business at these auctions, but was in fact both wrong and illegal. He has spent the past five years trying to make up for his grave error in judgment, first by cooperating with the United States in its investigation, and then by accepting responsibility and ensuring that he continues his real estate business with only the most scrupulous moral and legal principles.

Mr. Chang pled guilty to violating one count of 15 U.S.C. §1 pursuant to a plea agreement with the United States. The Plea Agreement contemplates a motion for a downward departure by the United States pursuant to United States Sentencing Guidelines Section 5K1.1 from an Adjusted Offense Level of 13, which produces, before any departure, a guideline range of 12-18 months in Zone C of the United States Sentencing Guidelines Sentencing Table. The defendant is also permitted to argue for a variance, and does so here.

Mr. Chang is grateful for the Probation Officer's recognition that as compared with many other defendants, his conduct was at the more moderate end of the spectrum and that his health and age make him a poor candidate for a custodial sentence. *See* PSR ¶¶ 79-81. The Probation Office has recommended a variance and sentence of three years probation, with a special condition requiring three months of home detention with electronic monitoring at the discretion

of the U.S. Probation Office.  Mr. Chang has no factual objections to the report.  He does, however, ask the Court not to impose home confinement.[1]  Mr. Chang has an unpredictable work schedule and attends frequent medical appointments.   Mr. Chang respectfully urges this Court to adopt the recommendation of the Probation Office of a non-custodial sentence and asks that a sentence of probation be imposed as punishment for his mistakes.

As identified by the Probation Office, there are mitigating factors that warrant a below-guideline sentence in this case.  In addition to the three factors identified by the Probation Office in support of a variance: 1) Mr. Chang's advanced age, 2) his medical condition, and 3) the need to avoid unwarranted sentencing disparity, Mr. Chang submits that the following additional factors also support a sentence below the advisory guideline range: 4) the aberrant nature of the offense; 5) Mr. Chang's low risk of recidivism due to his personal background and age; 6) his long history of lawful employment; 7) his extreme remorse and acceptance of responsibility; and 8) his family support and responsibilities.

A sentence of three years probation is sufficient, but not greater than necessary, to achieve the goals of sentencing stated in 18 U.S.C. § 3553 (a)(2) and constitutes a fair and just sentence.

**PERSONAL BACKGROUND**

Mr. Chang was born in 1936 in Kolkata, India.  He was one of six children raised in a tightly-knit family in an apartment in Kolkata.  He was a good student, and worked hard, eventually becoming a dental assistant in one of his father's dental offices.  He had a job from the time he was old enough to work.  He met his wife Chia Chih Yuan in Kolkata, and the two were married in 1965.  They have been happily married since.

---

[1]If the Court is inclined to impose home detention, the defense would ask for a level of home confinement known as "curfew" rather than the more strict "home detention" suggested by the Probation Office.  Both methods of home confinement allow the probation officer to determine the precise method of monitoring.

DEFENDANT KUO HSUAN CHANG'S
SENTENCING MEMORANDUM
*US v. Chang,* Case No. CR 13-670 CRB          3

1    In 1969, Mr. Chang applied for and received a visa to come to the United States.  He

2    came to this country seeking a better opportunity for his young family, but could only afford to

3    come alone with very little money in his pocket.  He worked hard, and within a few years he was

4    able to move his wife and children to the United States.  Like his parents, his first job here was as

5    a dental technician.  Mr. Chang and his wife have raised two successful, law-abiding children,

6    Mike and Steve, both of whom live here in the Bay Area and have raised their own children.  Mr.

7    Chang is extremely proud of his sons and grandchildren.

8    In 1977, Mr. Chang decided to get into the real estate business with his first purchase of a

9    motel in Gilroy.  He still owns and manages this motel with the help of his niece.  This purchase

10   was the first of many real estate purchases, and was the beginning of a now 40-year real estate

11   career.  Until he attended the first foreclosure auction in this case in 2009, he had never

12   purchased real estate at an auction.

13   Mr. Chang is very close with his siblings, and has maintained close relationships with his

14   extended family.  Recently, in January 2018, he suffered the tragic loss of his brother from

15   complications of bypass surgery.  Mr. Chang is still recovering from the loss of his near lifelong

16   friend and brother.

17   Mr. Chang has his own health problems as well, which he manages with regular medical

18   appointments, sometimes on an emergency basis.  Mr. Chang was diagnosed with prostate cancer

19   in early 2004, which is currently in remission.  In 2006, he was diagnosed with atrial

20   defibrillation, and he also suffers from glaucoma, high blood pressure, hearing loss and constant

21   pain in his ankle.  Mr. Chang takes several medications to manage these conditions.

22                                  **THE OFFENSE CONDUCT**

23   As explained above, Mr. Chang has been involved with the real estate business since

24   1977.  He has been a law-abiding man, always conducting his business honorably and legally.  In

25   2009, his business partner Lydia introduced him to the concept of buying property at foreclosure

26

1   auctions.  When Mr. Chang and Lydia Fong arrived at Mr. Chang's first auction, he met several

2   men (now co-defendants) who informed him of how business would be done if he wanted to bid

3   on a property.  This involved cash payments and reduced bids, which they were told was "how

4   business was done here."  He understands that the existence of this process is no excuse for his

5   own poor decision making.  He made the decision to participate in this setup, and regrets that

6   decision to this day.  Mr. Chang had no prior experience with purchasing real estate at auctions

7   and knew nothing of this scheme before arriving at his first auction with Lydia in 2009.  He was

8   naive, and also ignored that internal voice that was telling him this was not how an auction

9   should be conducted.

10                       **KUO HUAN CHANG'S SENTENCING REQUEST**

11       **A.     The Court Should Exercise its Discretion To Impose a Sentence Below the
                  Guideline Range**

12

13              When determining the appropriate sentence for an individual defendant, a district court

14   should impose the shortest sentence possible that, (1) reflects the seriousness of the offense,

15   promotes respect for the law, and provides just punishment for the offense; (2) deters future

16   criminal conduct; (3) protects the public from the defendant and (4) provides the defendant with

17   the "needed educational or vocational training, medical care, or other correctional treatment in

18   the most effective manner."  18 U.S.C. § 3553(a)(2).  When determining whether a given

19   sentence is sufficient to effectuate these purposes, district courts are directed to consider the

20   nature and circumstances of the offense and the history and characteristics of the defendant, the

21   kinds of sentences available, the defendant's guideline range, any relevant policy statements, the

22   need to avoid unwarranted sentence disparities among defendants with similar records who have

23   been found guilty of similar conduct, and the need to provide restitution to any victims of the

24   offense.  18 U.S.C. § 3553(a).  The Supreme Court in  *United States v. Booker*, 543 U.S. 220

25   (2005), and the long line of cases in its progeny, do "not allow a sentencing court to presume that

26

1   a sentence within the applicable Guidelines range is reasonable." *Nelson v. United States*, 555

2   U.S. 350, 352 (2009).

3   **B.   Multiple Bases Exist in This Case to Vary From the Recommended Guideline Range and Impose a Sentence of Three Years Probation**

4

5   As noted at the outset, there are numerous mitigating factors in this case that warrant a

6   modest variance from the recommended guideline range: 1) the aberrant nature of the offense; 2)

7   Mr. Chang's low risk of recidivism due to his personal background and age; 3) the circumstances

8   of his involvement in the scheme; 4) his long history of lawful employment; 5) his extreme

9   remorse and acceptance of responsibility; 6) his poor health condition; 7) his advanced age; and

10  8) the need to avoid unwarranted sentencing disparities among defendants with similar

11  backgrounds who have been convicted of similar offenses. *See* PSR, ¶79-81.

12  *1.   Mr. Chang's Behavior in This Case was Highly Unusual and Stands Little Chance of Reoccurring*

13

14  It is noteworthy that Mr. Chang is 78 years old and this offense is his first and only

15  criminal conviction.  The aberrant nature of this offense conduct and minimal chance of it

16  reoccurring warrants consideration.  Mr. Chang has no criminal history and has worked hard in

17  lawful occupations for his entire life.  His participation in the offense in this case was truly

18  unusual for him and importantly, he did not seek out this illegal conduct.  He was invited to

19  participate in the foreclosure auction practice by a trusted friend and business partner, and then

20  once there, he was instructed as to "how business is done."  He does not blame his business

21  partner for introducing him to the foreclosure auctions, but this fact demonstrates that Mr. Chang

22  was not someone who willingly sought out a criminal scheme, or who ever would have initiated

23  such real estate dealings on his own.  His law-abiding nature is clear given that it has been eight

24  years since the offense conduct in this case, and he has gone without a single pretrial violation or

25  misstep of any kind.  As the letters of support from his family make clear, his risk of recidivism

26

DEFENDANT KUO HSUAN CHANG'S
SENTENCING MEMORANDUM
*US v. Chang,* Case No. CR 13-670 CRB          6

1    is extremely low.  *See* Letters of Support, attached hereto as Exhibit B.

2             *2.  Mr. Chang Has Demonstrated Sincere Remorse*

3            Mr. Chang has demonstrated strong remorse.  He regrets his actions very much and places

4    the blame appropriately on himself.  *See* Statement of Acceptance of Responsibility, attached

5    hereto as Exhibit A ("The group of men said if you don't do it the way we do business here, you

6    will not be able to get any property.  We have more money and we will outbid you.  It was said as

7    a threat, *but I know that this is no excuse. I admit that I am guilty because I could have made a*

8    *right choice to stop and just not buy property with these people*.").  Mr. Chang's son Steve

9    Chang explains: "When he told his family of the charges he faced and the infraction he had

10   committed I was shocked with disbelief because these actions were not indicative of the man and

11   father that I know.  However, upon reflection [] I now understand that he thought he was

12   operating within the rules as he understood them at the time.  Of course, he now realizes his acts

13   were outside the bounds of law and is ashamed for the part he played.  And he is committed to

14   make amends."  *See* Letter of Steve Chang, Exh. B.  As his family knows very well, Mr. Chang's

15   participation was a small detour from an otherwise law-abiding life.  He has decades of lawful

16   business practices to prove it.  Mr. Chang's letter to the Court demonstrates that he is deeply

17   remorseful and saddened by his actions.  *See* Exh. A.  He is committed to leaving this experience

18   far behind him, and will never become embroiled in the criminal justice system again.

19            In addition, not only has he demonstrated his acceptance of responsibility by entering a

20   timely plea, he has endeavored to assist the government so that it would have a greater picture of

21   how this scheme was being run by the organizers of the foreclosure auctions.  This willingness to

22   admit his wrongdoing, including sitting down with government officials and assisting them in

23   their investigation demonstrates an additional level of remorse.  The government will be making

24   a motion for a downward reduction based upon Mr. Chang's truthful cooperation.  The extent of

25   that departure is entirely within the sound discretion of the Court and Mr. Chang submits that a

26

DEFENDANT KUO HSUAN CHANG'S
SENTENCING MEMORANDUM
*US v. Chang,* Case No. CR 13-670 CRB          7

1   modest variance to a probationary sentence is appropriate.

2            3.    *Mr. Chang's Strong Family Ties and Responsibilities Support the Modest Variance Sought Here*

3

4        An additional mitigating factor in this case is Mr. Chang's strong family ties and

5   responsibilities. His strong family ties augur in favor of his future success and support a sentence

6   of probation. Strong family ties are an important, and entirely appropriate consideration for this

7   Court. *See U.S. v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006) (9th Cir. 2006) ("In the

8   'broader appraisal,' available to district courts after *Booker*, courts can now... have the discretion

9   to weigh a multitude of mitigating and aggravating factors that existed at the time of mandatory

10   Guidelines sentencing, but were deemed 'not ordinarily relevant,' such as age, education and

11   vocational skills, mental and emotional conditions, employment record, *and family ties and*

12   *responsibilities*.") (emphasis supplied). Mr. Chang has a close loving family, all of whom are

13   confident that he will never let them down again. *See* Exh. B (letters of support from family).

14        Importantly, in addition to supporting his wife, Mr. Chang will soon be acting as a care

15   giver for her. Mr. Chang's wife is scheduled to have two medical procedures in May 2018 - knee

16   surgery and a vascular embolization procedure. Given her age and physical condition, there will

17   be significant recovery time after her knee surgery, including physical therapy appointments. Mr.

18   Chang will be the sole caretaker for his wife during this period of rehabilitation and he needs to

19   be there for her.

20            4.    *Mr. Chang's Age and Medical Condition Warrant a Variance*

21        In addition to the aberrant nature of the offense conduct, his strong family ties and

22   responsibilities, his lack of criminal history, and his acceptance of responsibility, a modest

23   variance to probation is warranted due to Mr. Chang's age and health conditions. As detailed in

24   the PSR, Mr. Chang is 78 years old, and has several medical conditions that require ongoing care.

25   While these conditions are not currently life-threatening, the concern over inadequate medical

26

DEFENDANT KUO HSUAN CHANG'S
SENTENCING MEMORANDUM
*US v. Chang,* Case No. CR 13-670 CRB       8

treatment within the Bureau of Prisons is significant for Mr. Chang, and could very well result in the worsening of these conditions. First of all, as noted in the PSR, Mr. Chang was diagnosed with prostate cancer in 2004. Although currently in remission, Mr. Chang has regular medical appointments to monitor his health. Additionally, Mr. Chang's heart condition has required him on numerous times to call 911 and seek emergency medical care. The medications are largely effective at controlling this condition, but when he has an episode of rapid, out of control heartbeat, it is terrifying and he needs to be able to receive immediate, and perhaps most importantly, competent medical care.

Age and medical condition are entirely appropriate bases on which to grant a variance from the advisory guideline range. *See e.g., U.S. v. Hildebrand*, 152 F.3d 756 (8th Cir. 1998) (affirmed downward departure for 70-year old from range of 51-63 months to probation with 6 months in home confinement where defendant was bookkeeper for a group convicted of mail fraud and had life-threatening health conditions).

The current state of medical care in the Bureau of Prisons has been the subject of significant scrutiny. The Office of the Inspector General in its 2016 report on medical care within the Bureau of Prisons acknowledged how shortages in medical staffing impact safety and security. *See* Office of the Inspector Gen'l, U.S. Dep't of Justice, *Review of the Federal Bureau of Prisons' Medical Staffing Challenges* (Mar. 2016), found at: https://oig.justice.gov/reports/2016/e1602.pdf. The OIG found that aging inmates on average cost 8 percent more per inmate than inmates age 49 or younger. Importantly, and as pertinent to Mr. Chang, aging inmates also have delayed access to medical care – with an average wait time of 114 days to see an outside specialist. They also have delayed access to lower bunk beds and limited accessibility to cells and bathrooms, especially in older institutions. Narrow sidewalks and uneven terrain make it difficult for aging inmates to move around prisons. *See* U.S. Dep't of Justice, Office of Insp. Gen'l, *The Impact of an Aging Inmate Population on the Federal Bureau*

1    *of Prisons* (Feb. 2016), https://oig.justice.gov/reports/2015/e1505.pdf.  More recently, the current

2    BOP Director has acknowledged:  "[i]nmate health care remains a challenge for us. With

3    increasing numbers of older inmates in our institutions, many of whom have complicated and

4    chronic medical needs, we face rising costs of health care and pharmaceuticals.  At the same

5    time, recruitment and retention of qualified medical professionals to staff our prisons – many of

6    which are somewhat remotely located – is hampered by incentives offered by the private sector."

7    Oversight of the Bureau of Prisons and Inmate Reentry, Hearing Before the Committee on

8    Oversight and Gov't Reform, House of Rep. (Dec 13, 2017) (statement of Mark Inch, Dir. , Fed.

9    Bureau of Prisons), which can be found at:

10   https://oversight.house.gov/wp-content/uploads/2017/12/Inch-BOPStatement-

11   12-13.pdf.

12         In other words, despite the 2016 OIG report and efforts to address the medical

13   shortcomings within the BOP, the director himself recognizes that adequate healthcare for an

14   aging inmate population remains "a challenge."  The somewhat euphemistic phrasing

15   notwithstanding, it is a nerve-wracking and potentially life-threatening situation for an individual

16   with chronic health conditions nearing his 80th birthday who faces the prospect of a federal prison

17   sentence.

18         Mr. Chang's current medical conditions -  glaucoma, high blood pressure, hearing loss,

19   chronic leg pain, and atrial fibrillation - constitute a mitigating factor that supports the Probation

20   Office's recommendation of a probationary sentence.  He is at extremely low risk of re-

21   offending, and yet a sentence of imprisonment could very well be life-threatening.   A

22   probationary sentence will allow Mr. Chang to leave without permission to go to the hospital,

23   seek prompt medical care for him (and/or his wife) without the added stressful step of seeking

24   permission first from a probation officer.  The Probation Office rightly finds this circumstance to

25   justify a variance in this case.

26

1    *5.    A Sentence of Probation Avoids Unwarranted Sentencing Disparities*

2    As the Probation Office correctly notes, a sentence of probation for Mr. Chang is an

3    important basis on which to consider a sentence below the advisory guideline range.  As the

4    Court is well aware, the bid-ridding scheme at issue in this case in San Francisco and San Mateo

5    Counties is not the only case resulting from the investigation into this conduct in the greater bay

6    area.  Numerous defendants have entered guilty pleas and several others proceeded to trial in the

7    east bay federal court matters, assigned to the Honorable Phyllis Hamilton.  This Court thus has

8    the benefit of the sentencing ranges in those cases and can properly consider them here.  As

9    pertinent to Mr. Chang, undersigned defense counsel is informed and believes that many of the

10   lower level participants with conduct similar to that of Mr. Chang received probationary

11   sentences.  Thus, per 18 U.S.C. 3553(a)(6), the Probation Office correctly notes that a sentence

12   below the advisory guideline range may be warranted here in order to avoid an unwarranted

13   sentencing disparity.  The Probation Office is perhaps in the best position to make this

14   determination as it has had the benefit of reviewing dozens of these cases.

15                                    **CONCLUSION**

16   Kuo Hsuan Chang has learned his lesson and he is terribly sorry for what he has done.  He

17   recognizes his mistakes, and writes about them with refreshing honesty.  He has spent the better

18   part of the past five years worrying, feeling sad, and feeling ashamed of himself.  This rather

19   agonized mental state has in and of itself acted as its own form of punishment.  He appreciates

20   the recommendation of the Probation Office and respectfully asks this court to sentence him to a

21   term of three years probation.  Such a sentence takes into account his otherwise law-abiding life,

22   his relatively minor involvement in the overall bid-rigging scheme, his close family ties, his

23   extraordinary remorse and acceptance of wrongdoing, and perhaps most importantly and as

24   recognized by the Probation Office, his medical condition and advanced age.

25   This experience has been devastating for Mr. Chang, and he has lived with the

26

DEFENDANT KUO HSUAN CHANG'S
SENTENCING MEMORANDUM
*US v. Chang,* Case No. CR 13-670 CRB          11

1  humiliation and shame that his own poor decisions have wrought for many years now.  He sees

2  the errors in judgment and is certain that he will never find himself in this position again.  A

3  probationary sentence is more than sufficient to deter any criminal conduct in the future and is

4  sufficient, but not greater than necessary to achieve the goals of 18 U.S.C. § 3553(a).

5

6  Dated: April 19, 2018                    Respectfully submitted,

7                                           TONY TAMBURELLO

8                                           /s/ *Tony Tamburello*
                                            Attorney  for Kuo Huan Chang

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26